Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiff Waldo Leyva

Michael J. Stortz (SBN 139386)
michael.stortz@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105-2235
Telephone:  415-591-7500
Facsimile:  415-591-7510

*[Additional Counsel Listed Below]*

Attorneys for Defendant Nissan North America, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| WALDO LEYVA, individually, and on behalf of a class of similarly situated individuals,<br><br>             Plaintiff,<br><br>      v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation,<br><br>             Defendant. | Case No.: 5:17-cv-01870 FMO (SHKs)<br><br>**CLASS ACTION**<br><br>**JOINT RULE 26(f) REPORT**<br><br>Date:   February 22, 2018<br>Time:   10:00 a.m.<br>Place:   Courtroom 6(D)<br>Judge: Hon. Fernando M. Olguin |

1  Zoe K. Wilhelm (SBN 305932)
   Zoe.wilhelm@dbr.com
2  Marshall L. Baker
   Marshall.baker@dbr.com
3  Drinker Briddle & Reath LLP
   1800 Century Park East, Suite 1500
4  Los Angeles, CA 90067-1517
   Telephone:   (310) 203-4000
5  Facsimile:    (310) 229-1285

6
   E. Paul Cauley (PHV to filed)
7  Paul.cauley@dbr.com
   Drinker Briddle & Reath LLP
8  1717 Main Street, Suite 5400
   Dallas, texas 75201-7367
9  Telephone:   (469) 357-2500
   Facsimile:    (469) 327-0860

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Waldo Leyva ("Plaintiff") and Nissan North America, Inc., ("NNA" or "Defendant") (together, "the Parties") hereby submit their Joint Rule 26(f) Report pursuant to the Court's Order re Scheduling Conference [Dkt. No. 17] and the Parties' January 31, 2018, early meeting of counsel at the offices of Drinker Biddle & Reath in Los Angeles.

# I.   STATEMENT OF THE CASE

## A.   Plaintiff's Statement of the Case

Plaintiff contends the following: This nationwide class action arises out of Nissan's alleged failure to disclose that the 2012-2017 Nissan Sentra ("Class Vehicles") equipped with an Xtronic Continuously Variable Transmission ("CVT") are defective. Specifically, the CVT fluid in the Class Vehicles is controlled by a small cooler attached to the CVT itself, rather than the radiator. The design of its cooling system makes the CVT unreasonably sensitive to heat. The CVT in every Class Vehicle is thus prone to overheating, which may activate "Fail-Safe Mode" (fluid temperature protection logic mode) and reduce engine performance, among other symptoms. As a result, drivers may experience conditions ranging from shudders or vibrations to catastrophic failure. (the "CVT Defect"). Owners of the affected vehicles have a reasonable expectation that their vehicles' CVT will not malfunction or fail, resulting in costly repairs and myriad safety hazards.

NNA has known about this problem since at least 2012, by which time it was receiving consumer complaints and released a technical service bulletin ("Service Bulletins" or "TSBs") regarding the CVT Defect. For example, on July 6, 2012, Nissan issued TSB NTB12-057 regarding the CVT Fail-Safe "condition" in certain vehicles, including the 2007-2011 Sentra. In the TSB, NNA warned its dealers that the vehicles' Fail-Safe mode was activating due to overfill in the CVT's fluid reservoir. Technicians were instructed to check the level after the CVT's temperature had reached 70 /158 but before it exceeded

1   80  /176  , with an accompanying illustration defining it as "hot condition." On

2   August 15, 2014, NNA issued TSB NTB13-095a, notifying its dealers of reduced

3   performance in the 2007-2012 Sentras due to the CVT fluid temperature

4   protection logic (Fail-Safe mode). , Service technicians were instructed to install

5   an external CVT cooler to the pre-existing weld nuts on the front of the radiator

6   support. Despite these repairs, Class Members continued to experience

7   symptoms of the CVT Defect.

8      If Plaintiff and Class Members had known about the CVT Defect at the

9   time of sale or lease, they would not have purchased or leased the Class Vehicles

10  or would have paid less for them.

11     Plaintiff alleges violations of the Consumers Legal Remedies Act and

12  Unfair Competition Law, Breach of Implied Warranty Breach of under

13  California law and the Magnuson-Moss Warranty Act, and Unjust Enrichment.

14     **B.**  **Defendant's Statement of the Case**

15     Plaintiff alleges that after purchasing a new 2015 Nissan Sentra, he drove the

16  vehicle over 64,000 miles in just two years.  Although Plaintiff's vehicle allegedly

17  had "trouble getting up to speed" after he purchased it, Plaintiff does not allege that

18  his vehicle had any condition that required repair during the warranty period.

19  Rather, Plaintiff took his vehicle to his dealer only when – after driving 64,450 miles

20  in less than two years – the check engine light came on.  Plaintiff alleges that his

21  transmission "failed" during a test drive by a service technician, and the technician

22  informed Plaintiff that the transmission would need to be replaced.  He does not

23  allege that he was ever personally at risk.  Therefore, his vehicle was merchantable

24  as a matter of law and Plaintiff cannot maintain implied warranty claims.

25     Plaintiff alleges that his deductible for the repair "was $100." He does not

26  allege that he paid the $100 deductible to NNA, and he does not claim to have

27  incurred any other cost associated with this transmission.  Therefore, he cannot

28  maintain a claim for restitution under his CLRA, UCL, or unjust enrichment claims.

Among the key factual issues in dispute is what materials Plaintiff reviewed and relied on in deciding to purchase his vehicle, what issues he experienced with the vehicle, what damages he incurred, and whether Plaintiff's vehicle had a known "safety" defect at the time of sale that was common to all putative class vehicles. For these and other reasons, Defendant expects that individualized issues will preclude certification of Plaintiff's proposed classes.

Investigation in this matter is ongoing, and no formal discovery has yet been undertaken.

## II.  SUBJECT MATTER JURISDICTION

This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) and based on 28 U.S.C. §§ 1441 and 1453.  In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims, because all Plaintiff's claims are derived from a common nucleus of operative facts and are such that Plaintiff would ordinarily expect to try them in one judicial proceeding.

Defendant agrees that the Court has subject matter jurisdiction under the Class Actions Fairness Act, 28 U.S.C. § 1332(d)(2).

## III.  BRIEF DESCRIPTION OF KEY LEGAL ISSUES

### A.  Plaintiff's Description of Key Legal Issues

Plaintiff believes that the key legal issues, among others, are:

1.  Whether the Class Vehicles' CVT is defective;

2.  Whether the CVT Defect constitutes an unreasonable safety risk;

3.  Whether Defendant knew about the defect(s) relating to the CVT and, if so, how long Defendant has known of the defect(s);

4.  Whether the defective nature of the CVT constitutes a material fact;

5.  Whether Defendant has a duty to disclose the defective nature of the CVT to Plaintiff and Class Members;

6.      Whether Defendant failed to disclose or actively concealed the CVT's defect(s) from Plaintiff and Class Members;

7.      Whether failure to disclose the alleged CVT defect(s) constitutes unlawful, unfair, or fraudulent business practices;

8.      Whether Plaintiff and Class Members are entitled to equitable relief, including a preliminary and/or permanent injunction;

9.      Whether Defendant knew or reasonably should have known of the defect(s) relating to the CVT before it sold and leased Class Vehicles to Class Members; and

10.     Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective CVT.

**B.      Defendant's Description of Key Legal Issues**

On January 12, 2018, NNA filed a motion to dismiss all claims except for Plaintiff's claim for damages under the Consumer Legal Remedies Act.  As outlined in that motion, key legal issues include:

1.      Whether Plaintiff can pursue claims for equitable relief when he has an adequate remedy at law;

2.      Whether Plaintiff can pursue a claim for restitution when he cannot establish that NNA acquired any of his money or property;

3.      Whether nonrestitutionary disgorgement is available under Plaintiff's UCL or unjust enrichment claims;

4.      Whether unjust enrichment is a separate cause of action under California law and, if so, whether it is precluded by the presence of an express contract;

5.      Whether Plaintiff can recover on a claim for breach of implied warranty when his vehicle was safely driven for more than 64,000 miles in two years;

6.    Whether Plaintiff can pursue a Magnusson-Moss Warranty Act claim when he failed to utilize the informal dispute resolution program that NNA requires for such claims; and

7.    Whether Plaintiff can seek declaratory relief when such relief duplicates his legal claims and does not purport to provide guidance for the parties' future conduct.

In addition, key legal issues include whether the proposed class and sub-classes meet the requirements for certification under Federal Rule of Civil Procedure 23.

## IV.    PARTIES AND EVIDENCE

### A.    Plaintiff's Statement re Parties, Witnesses, and Documents

Plaintiff in this action is Waldo Leyva. Plaintiff states that, based on the information currently known to him, at least the following persons (exclusive of expert witnesses and attorneys) have knowledge of the facts that Plaintiff may use to support his claims:

**1.**    Plaintiff Waldo Leyva.  Plaintiff can be reached through Plaintiff's counsel (c/o Jordan L. Lurie, Robert K. Friedl, Tarek H. Zohdy, Cody R. Padgett, and Karen L. Wallace, Capstone Law, APC, 1875 Century Park East, Suite 1000, Telephone: (310) 556-4811);

**2.**    Class Members, whose names and contact information are in NNA's possession;

**3.**    Dealers, repair facilities, service advisors, and technicians who inspected Plaintiff and Class Members' vehicles; and

**4.**    NNA's dealers, service advisors, and technicians.

In addition to warranty booklets, owners' manuals, maintenance guides, other materials provided by NNA with each sale of the Class Vehicles,  and other documents in NNA's sole possession, custody or control, Plaintiff identifies repair orders and invoices pertaining to the subject defect for Plaintiff's vehicle

and Plaintiff's Retail Installment Sale Contract for the Subject Vehicle, which are in Plaintiff's possession, custody, or control and contemplated to be used in support of the material allegations of his Complaint. Plaintiff also has in his possession hyperlinks to consumer complaints from various websites, hyperlinks to consumer complaints made to the National Highway Traffic Safety Administration ("NHTSA") Office of Defect Investigations, communications from Defendant regarding the CVT, and TSBs.

### B.    Defendant's Statement re Parties, Witnesses, and Documents

NNA filed its Certification of Interested Entities or Persons and Corporate Disclosure Statement on November 16, 2017.  NNA identified Nissan Motor Co., Ltd. as the parent company of NNA.  Other than the named Parties and Plaintiffs' counsel, Nissan Motor Co., Ltd. was identified as having either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

Depending on the ultimate issues deemed relevant to this case, there could be many NNA employees with discoverable information that NNA may use to support its claims or defenses.  At this time, NNA identifies:

    (a)    Jim Blenkarn
                Nissan North America, Inc.
                610 Enon Springs Rd. East
                Smyrna, TN 37167
                615-220-8111

                Mr. Blenkarn is the Senior Manager of Systems Quality Improvement. He has knowledge of NNA's investigation and projects related to the CVT transmission in the 2013-2017 model year Nissan Sentra vehicles.

    (b)    John Connolly
                Nissan North America, Inc.
                610 Enon Springs Rd. East

1   Smyrna, TN 37167
2   615-220-8111

3   Mr. Connolly has worked with Nissan's Field Quality Assurance
4   group.  He has knowledge of NNA's investigation and projects
    related to the CVT transmission in the 2013-2017 model year Nissan
5   Sentra vehicles.

6

7   Other individuals may be identified after investigation and discovery have

8   progressed, and NNA will supplement this response in accordance with the

9   requirements set forth in the Local Rules and the Federal Rules of Civil

10  Procedure.

11          Based on information learned to date, NNA also identifies Plaintiff Waldo

12  Leyva as an individual who may have discoverable information used to support

13  its defenses.

14          NNA identifies the following categories of documents, data compilations

15  and tangible things:

16          (a)     Owner's Manuals for 2012 to 2017 model year Nissan Sentra

17  vehicles sold in the United States;

18          (b)     Product brochures for 2012 to 2017 model year Nissan Sentra

19  vehicles sold in the United States;

20          (c)     Warranty booklets for 2012 to 2017 model year Nissan Sentra

21  vehicles sold in the United States;

22          (d)     Sales and service history records for Plaintiff's subject vehicle;

23          (e)     Excerpts of service manuals that pertain to the CVT in 2012 to 2017

24  model year Nissan Sentra vehicles manufactured and distributed in the United

25  States by NNA;

26          (f)     Warranty and consumer affairs data, to the extent any exists, for

27  Plaintiff's subject vehicle;

28          (g)     Technical Service Bulletins; and

(h)    Project Files and related field investigation reports related to the transmission in 2013 to 2017 model year Nissan Sentra vehicles.

Certain other electronic data, such as consumer affairs and warranty claims data, are maintained on mainframe computers or servers. Access to the data requires writing programs to query databases. NNA will work together with Plaintiffs to develop queries to obtain relevant data, subject to protecting the rights of NNA's customers.

## V.    INSURANCE

The Parties are not aware of any insurance coverage applicable to this matter.

## VI.    MAGISTRATE JUDGE

The Parties do not consent to a magistrate judge for all purposes including trial.

## VII.    DISCOVERY PLAN

### A.    Subjects on Which Discovery May Be Needed

#### 1. Plaintiff's Anticipated Discovery

Plaintiff anticipates propounding discovery related to several key areas of investigation, including: the Class Vehicles, their CVT and associated parts, and the CVT Defect; the design of the CVT and its implementation; alternative designs and failures; warranty terms, complaints, and service and repair records; sales data concerning the Class Vehicles; service or other TSBs, recall or "service campaign" notices, and analyses of associated costs; other lawsuits and complaints to and/or investigations by NHTSA; policies and procedures relating to the CVT Defect, including warranty claims; and the identities of Class Members.

In addition to the discovery set forth above, Plaintiff anticipates the need for the following additional discovery:

- Deposition of Defendant's Corporate Representatives

regarding consumer complaints, warranty data, goodwill repairs, training, design, internal testing, and other related issues regarding the Class Vehicles, their CVT, and related parts, and the alleged CVT Defect;

- Additional interrogatories, as necessary, following receipt of Defendant's Responses to Plaintiff's First Set of Interrogatories;

- Additional document requests, as necessary, following receipt of Defendant's Initial Disclosures and Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents;

- Depositions of Defendant's experts and related document requests; and

- Requests for Admissions and additional interrogatories and document requests.

### 2. Defendant's Anticipated Discovery

NNA believes that a substantial portion of the First Amended Complaint should be dismissed, which can impact the amount of discovery that is warranted. NNA will propound written discovery to Plaintiff and take his deposition. NNA may need to take third party discovery (*e.g.*, Plaintiff's mechanic) depending on the results of the discovery from Plaintiff and may need to take discovery of putative class members. NNA will take expert discovery related to class certification and merits issues at the appropriate time.

### B.   Initial Disclosures (Rule 26(f)(2) & (f)(3)(A))

The Parties will exchange their disclosures fourteen (14) days after the scheduling conference.

### C.   Cut-off Date for Non-Expert Discovery.

The Parties agree that the discovery cut-off date should be sixty (60) days

before any trial date set by the Court.

**D.    Disclosure of Expert Witnesses as Required by Fed.R.Civ.P. 26(a)(2)**

The Parties believe that dates for designation of the Parties' experts and expert reports for trial, and dates for completion of depositions of those experts, should be set by the Court following its ruling on class certification.

**E.    Class Certification Expert Discovery Cut-Off Date**

The Parties shall work cooperatively to ensure that all expert discovery related to class certification is completed no later than twenty-eight (28) days prior to the deadline for the Parties to submit their joint brief re certification.

**F.    Any Proposed Changes in the Limits on Discovery Imposed by Fed.R.Civ.P. 26(b); 30(a)(2)(A), (B), or (C), 30(d), or 33(a)**

The Parties do not believe the discovery limits should be modified at this time.

**G.    Protective Order**

The Parties will negotiate and submit a proposed Stipulated Protective Order covering the production and handling of confidential materials.

**H.    Timing, Sequencing, Phasing or Scheduling of Discovery**

As stated in Section VII(C), *supra*, the Parties believe that dates for designation of the Parties' experts and expert reports for trial, and dates for completion of depositions of those experts, should be set by the Court following its ruling on class certification.

**I.    Electronic Discovery Protocol**

As contemplated by the Rules, the Parties will meet and confer on the subject of electronic discovery. At this time, the Parties are not aware of any issues concerning the discovery of ESI. As contemplated by the Rules, the Parties will meet and confer and discuss relevant categories of ESI as needed and whether a specific ESI protocol is necessary.

The Parties have confirmed that each has taken steps to ensure the preservation of potentially discoverable materials.  Specifically, each Party has advised the other Party that relevant personnel who may have discoverable materials in their possession have been advised to retain all available potentially relevant information on issues related to claims raised in this litigation.

The Parties will further meet and confer regarding the appropriate method and format of production which will largely depend on the type of information requested, and to determine what relevant metadata will be produced with ESI.

### 1.    Plaintiff's Statement Regarding Electronic Discovery

Plaintiff contends that to the extent NNA's routine or normal business activities, including routine deletions, compression of data, saving of new data, installation of new software and files, changes to system architecture, inputting, accessing, updating, and modifying data, may result in spoliation of any evidence relevant to the present matter, that NNA must halt all such activities until it is able to ensure that no relevant evidence is spoliated.

### 2.    Defendant's Statement Regarding Electronic Discovery

NNA has contacted key departments and personnel reasonably expected to have discoverable documents and information about design, field investigations, and service bulletins concerning the transmission in the 2012-2017 model year Nissan Sentra, including NNA's Field Quality Improvement, Field Quality Assurance, Consumer Affairs, Product Safety, Technical Publications, and Technical Compliance Groups.  NNA has instructed them to preserve hard copy and electronic files, including emails, relating to the transmission for vehicles within the class.  In addition, NNA has and continues to preserve emails and electronic files by targeted collection reasonably calculated to capture emails and files that may relate to transmission issues.

With the exception of the documents and information identified in the prior paragraph, NNA intends to continue routine recycling of disaster recovery

or back-up tapes and other media.  NNA will continue other normal business activities, including but not limited to routine deletion, compression of data, saving of new data, installation of new software and files, and changes to system architecture.  NNA may also input, access, update, or modify data in a database, resulting in the data being modified, altered, or overwritten where such data is modified, altered, or overwritten in the ordinary course of business, including, for example, updating customer contact or warranty information.  All such activities will be conducted in good faith in full recognition of the Parties' mutual obligation to locate and preserve relevant documents and data.

**J.      Privilege Issues (Rule 23(f)(3)(D))**

Each Party retains its right to object to discovery to the extent material protected by the attorney-client, work-product, or other applicable privilege is requested and agree to provide a privilege log regarding all documents withheld or redacted based on any claim of privilege or work product protection.

**K.      Orders That Should Be Entered Under Rules 26(c), 16(b), and/or 16(c) (Rule 23(f)(3)(F))**

As discussed above, the Parties anticipate that some of the discovery produced will be confidential.  The Parties will negotiate and agree upon a Protective Order covering the production of such confidential materials and submit for entry by this Court.

Other than a stipulated Protective Order, at this time, the Parties do not anticipate asking the Court to enter any orders under Rule 26(c) or 16(b).

**VIII. MOTIONS SEEKING TO ADD OTHER PARTIES OR CLAIMS, FILE AMENDED PLEADINGS, OR TRANSFER VENUE**

At this time, Plaintiff does not anticipate adding any additional parties or states to the operative complaint or filing amended pleadings.  Defendant is considering filing a motion to transfer venue to the U.S. District Court for the Northern District of California, where *Falk v. Nissan North America, Inc.*, No.

4:17-cv-04871-HSG, an earlier-filed case involving overlapping putative classes, is pending.

## IX.   CLASS CERTIFICATION

On January 12, 2018, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint. The Parties believe that setting a class certification deadline would be premature at this juncture, given that the pleadings are not yet settled. Therefore, the Parties propose that they meet and confer within fourteen (14) days after Defendant files an answer in order to file a stipulation setting forth an agreed upon deadline for Plaintiff's Motion for Class Certification, a briefing schedule for the Opposition and Reply, and a proposed hearing date.

## X.   DISPOSITIVE MOTIONS

Plaintiff anticipates filing a motion for summary judgment as to the class claims after certification is granted.

Defendant anticipates filing a motion for summary judgment or partial summary judgment.  Although Defendant disputes that certification will be granted, Defendant agrees that a cut-off date for dispositive motions should be set by the Court following its ruling on class certification.

## XI.   SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION (ADR)

The Parties prefer a private dispute resolution process and are amenable to mediation at the appropriate time.

## XII.   PRETRIAL CONFERENCE AND TRIAL

The Parties believe that dates for the pretrial conference and trial should be set by the Court following its ruling on class certification.

## XIII.   TRIAL ESTIMATE AND TRIAL COUNSEL

If a class is certified on all of the issues alleged in Plaintiff's complaint, Plaintiff estimates a two (2) week jury trial and contemplates calling approximately ten (10) witnesses.  Nevertheless, Plaintiff believes that the scope and length of the trial depend heavily on the issues that are certified for class

1 treatment.

2 **XIV. TRIAL COUNSEL**

3      Plaintiff's trial counsel would include Jordan Lurie, Tarek Zohdy, Cody

4 Padgett, and Karen Wallace.

5      Defendant's trial counsel would include E. Paul Cauley (*pro hac vice*

6 application to be submitted), Michael Stortz, Zoë Wilhelm, and Marshall Baker.

7 **XV. INDEPENDENT EXPERT OR MASTER**

8      The Parties do not believe the Court should consider appointing a master

9 pursuant to Rule 53 or an independent scientific expert.

10 **XVI. OTHER ISSUES**

11      The Parties are unaware of any other issues not discussed in the above

12 Report.

13 Dated:  February 8, 2018       Respectfully submitted,

14                Capstone Law APC

15

16             By: /s/ Tarek H. Zohdy

17               Jordan L. Lurie
              Tarek H. Zohdy

18               Cody R. Padgett
              Karen L. Wallace

19               Attorneys for Plaintiff

20

21

22

23 / / /

24

25 / / /

26

27 / / /

28

1

2

3   Dated:  February 8, 2018                    Respectfully submitted,

4                                               DRINKER BIDDLE & REATH LLP

5
                                                By: /s/ Zoe Wilhelm
6                                                    Zoe Wilhelm

7                                                    Marshall Baker
                                                     1800 Century Park E, Suite 1500
8                                                    Los Angeles, CA  90067-1517
                                                     Telephone:    310-203-4000
9                                                    Facsimile:    310-229-1285

10                                                   Michael J. Stortz
                                                     50 Fremont Street, 20th Floor
11                                                   San Francisco, CA 94105-2235
                                                     Telephone:    415-591-7500
12                                                   Facsimile:    415-591-7510

13

14                                                   E. PAUL CAULEY (*pro hac vice* to be
                                                     filed)
15                                                   paul.cauley@dbr.com
                                                     1717 Main Street, Suite 5400
16                                                   Dallas, Texas  75201-7367
                                                     Telephone:    469-357-2500
17                                                   Facsimile:    469-327-0860

18                                                   Attorneys for Defendant

19

20

21

22

23

24

25

26

27

28

1

**Certification of Compliance with C.D. Cal. L.R. 5-4.3.4**

2

I hereby certify that pursuant to C.D. Cal. L.R. 5-4.3.4, I have obtained the

3

authorization from the above signatories to file the above-referenced document,

4

and that the above signatories concur in the filing's content.

5

I certify under penalty of perjury under the laws of the United States of

6

America that the foregoing is true and correct.  Executed on February 8, 2018.

7

8

By: /s/ Tarek H. Zohdy

9

Tarek H. Zohdy
Capstone Law APC

10

1875 Century Park East, Suite 1000
Los Angeles, California 90067

11

Telephone:  (310) 556-4811
Facsimile: (310) 943-0396

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28